UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MERIAL, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SERGEANT'S PET CARE PRODUCTS, INC.,**<br><br>**Defendant.** | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiff Merial, Inc. ("Merial"), for its complaint against Defendant Sergeant's Pet Care Products, Inc. ("Sergeant's"), alleges as follows:

### **THE PARTIES**

1. Merial is a Georgia corporation with its principal place of business in Duluth, Georgia. Merial, therefore, is a citizen of the State of Georgia.

2. On information and belief, Sergeant's is a corporation duly organized and existing under the laws of the State of Michigan with its principal place of business at 10077 South 134th Street, Omaha, Nebraska 68138, and therefore is a citizen of the States of Michigan and Nebraska. *See* 28 U.S.C. § 1332(c)(1).

### **JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because (i) there is complete diversity of citizenship between Merial and Sergeant's; and (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs. In particular,

Merial is a Georgia citizen, whereas Sergeant's is a citizen of both Michigan and Nebraska. Sergeant's does not reside in Georgia, and Merial does not reside in Michigan or Nebraska.

4. This Court has personal jurisdiction over the parties. Sergeant's is incorporated under the laws of Michigan and, therefore, is subject to general personal jurisdiction in Michigan. *See* M.C.L. 600.711. Additionally, Sergeant's transacts business in Michigan and owns, uses, and/or possesses real and/or tangible property within Michigan. *See* M.C.L. 600.715. Moreover, on information and belief, Sergeant's flea and tick products, which are at issue in this lawsuit, were sold in Michigan, including this judicial district, and/or were delivered into the stream of commerce with the expectation that such products would be purchased by consumers in Michigan, including in this judicial district.

5. This Court is the proper venue for this dispute pursuant to 28 U.S.C. § 1391 because Sergeant's is a resident of this District and a substantial part of the acts comprising the causes of action asserted herein occurred in this District.

## FACTUAL ALLEGATIONS

### Background

6. Merial shares a corporate relationship and/or affiliation with other Merial entities, including Merial Limited ("Limited"), Merial LLC, and Merial SAS ("SAS"), which are collectively referred to herein as the "Merial Entities."

7. The Merial Entities are world-leading animal health companies. Among the Merial Entities' most successful animal health products are the FRONTLINE PLUS® products. Since their launch, Frontline Plus products have been the world's bestselling flea and tick treatment for dogs and cats. Frontline Plus products provide gentle, long-lasting, fast-acting, waterproof flea

and tick control and are approved by the United States Environmental Protection Agency for eliminating flea and tick infestations.

8. The Frontline Plus products were covered by United States Patent No. 6,096,329 ("the '329 Patent"), which was valid and enforceable until its expiration in 2016. The '329 Patent was assigned to SAS, which granted Limited an exclusive license to the '329 Patent.

9. The '329 Patent relates to pesticidal combinations to control fleas and ticks on mammals, such as cats and dogs. The pesticidal combinations are in the form of "spot-on" compositions. A spot-on composition is one that is applied to an animal by being deposited on a small, localized area of the animal's skin.

10. The '329 Patent teaches particularly effective spot-on compositions comprising as active ingredients the pesticides known as fipronil and methoprene, among others. An active ingredient in a pesticidal product is an ingredient that kills or otherwise prevents, destroys, repels, or mitigates the target pests. Topical and spot-on flea and tick products comprising fipronil and methoprene as active ingredients are hereinafter referred to as "Combination Products."

11. Fipronil and methoprene are effective at different stages of a parasitic pest's life cycle, but both cause a pest's death. Fipronil is a pesticide that targets and kills adult fleas and ticks by interrupting their central nervous system. Methoprene, which is a type of pesticide known as a juvenile hormone mimic, kills fleas and ticks by interrupting their maturation cycle and preventing them from reaching maturity or reproducing.

12. In 2014, Merial purchased from Limited the assets of Limited used in the operation of the business of manufacturing and marketing animal health products in the United States, including but not limited to Limited's rights and obligations under several agreements (*e.g.*, the

Sergeant's Agreement, as amended, which is described in greater detail below) and Limited's exclusive rights in the '329 Patent.

### Sergeant's and Its Affiliates Covenant Not to Make, Use, Sell, or Offer to Sell Products Containing Fipronil and Methoprene

13. On or around August 10, 2010, Sergeant's filed a request for reexamination of the '329 Patent with the United States Patent and Trademark Office (the "Reexamination").

14. In or around early 2011, Sergeant's began selling, including within the State of Michigan, a Combination Product named Fiproguard Plus, which was a generic version of Frontline Plus that contained fipronil and methoprene. Sergeant's sold Fiproguard Plus even though it knew that such sales infringed the '329 Patent.

15. Subsequently, in or around April 2011 and while the Reexamination was still pending, Sergeant's proposed an agreement to Limited to induce Limited not to file suit against Sergeant's for infringement of the '329 Patent (the "Sergeant's Agreement," attached hereto as Exhibit A),[1] which Limited accepted. The Sergeant's Agreement provided, among other provisions, that if the Reexamination were resolved favorably for Limited, Sergeant's and its affiliates would refrain from any further making, using, selling, and offering for sale in the United States or importing into the United States, all Combination Products so long as the '329 Patent remains in effect (*see* Exhibit A at 2).

---

[1] Contemporaneously with the filing of this Complaint, Merial is seeking to file Exhibit A and B under seal. As set forth in the accompanying motion to seal, Merial recognizes this Court's preference for public disclosure, but respectfully submits that Sergeant's Agreement and Amendment require Merial use "reasonable efforts" to maintain their confidentiality.

4

16. The Sergeant's Agreement provided that it may not be modified or amended except in writing, signed by the Parties to the Sergeant's Agreement (*see* Exhibit A at 4).

17. The Sergeant's Agreement is binding on Affiliates, heirs, executors, administrators, successors, devisees and assigns of Sergeant's (*see* Exhibit A at 4).

18. On or around June 7, 2011, the Reexamination concluded favorably for Limited, thereby triggering Sergeant's obligation to refrain from any further making, using, selling, and offering for sale in the United States or importing into the United States, all Combination Products.

19. Subsequently, in or around July 2011, Sergeant's and Limited executed an Amendment to the Sergeant's Agreement (the "Sergeant's Amendment," attached hereto as Exhibit B). Among other things, the Sergeant's Amendment affirmed Sergeant's obligations under the Sergeant's Agreement to refrain from making, using, selling, or offering for sale any and all Combination Products.

20. Like the Sergeant's Agreement, the Sergeant's Amendment provided that it was binding on Sergeant's Affiliates, heirs, executors, administrators, successors, devisees and assigns (*see* Exhibit B at 5).

21. The Sergeant's Agreement and the Sergeant's Amendment each contain choice-of-law provisions that state that they are to be governed, interpreted and construed under Georgia law (Exhibit A at 5; Exhibit B at 5).

**Sergeant's Sales of the Patented Product**

22. On information and belief, Sergeant's has made, used, sold, and offered for sale—and is currently making, using, selling, and offering for sale—in the United States, or has imported

into the United States, Combination Products (the "Sergeant's Combination Products"), in violation of the Sergeant's Agreement and the Sergeant's Amendment.

23. On information and belief, the Sergeant's Combination Products have been and are registered to Sergeant's with the Environmental Protection Agency under EPA Registration Numbers 2517-134 (product for dogs) and -135 (product for cats).

24. On information and belief, the Sergeant's Combination Products also have been and are registered to the EPA under Establishment Number 2517-NE-01 and -02, which corresponds to Sergeant's.

25. The box of the Sergeant's Combination Products states that the products are manufactured by Sergeant's.

26. The box of the Sergeant's Combination Products provides a physical mailing address for Sergeant's should actual or potential customers have questions or comments.

27. On information and belief, Sergeant's sold millions of dollars' worth of Combination Products under their Fiproguard Plus and PetArmor Plus brands prior to the expiration of the '329 Patent. These sales violate Sergeant's' duties pursuant to the Sergeant's Agreement and Sergeant's Amendment. Thus, Merial brings this suit seeking affirmative relief for the harm that Sergeant's has caused Merial by breaching the Sergeant's Agreement and Sergeant's Amendment.

### COUNT I: CLAIM FOR BREACH OF CONTRACT

28. Merial reasserts and realleges the allegations contained in the foregoing Paragraphs 1–27 as if each such allegation was set forth herein in its entirety.

29. The Sergeant's Agreement is a valid and binding contract that was entered between Sergeant's and Limited.

30. The Sergeant's Amendment is a valid and binding contract that was entered between Sergeant's and Limited.

31. Limited has assigned its rights in the Sergeant's Agreement and the Sergeant's Amendment to Merial.

32. Limited and Merial have fully performed all of their obligations under the Sergeant's Agreement and the Sergeant's Amendment.

33. Sergeant's is bound by the Sergeant's Agreement and the Sergeant's Amendment.

34. On information and belief, Sergeant's has materially breached its obligations under the Sergeant's Agreement and the Sergeant's Amendment through the aforementioned conduct in making, selling, and offering for sale in the United States, and/or importing into the United States, the Sergeant's Combination Products.

35. By virtue of Sergeant's' material breach of the Sergeant's Agreement and the Sergeant's Amendment, Merial is entitled to damages suffered, which are yet difficult to precisely ascertain, but in any event exceed $75,000.00, exclusive of interest and costs.

### COUNT II: CLAIM FOR ATTORNEYS' FEES AND COSTS

36. Merial reasserts and realleges the allegations contained in the foregoing Paragraphs 1–35 as if each such allegation was set forth herein in its entirety.

37. In connection with, and subsequent to, its breaches of the Sergeant's Agreement and Sergeant's Amendment, Sergeant's has acted in bad faith and caused Merial unnecessary trouble and expense.

38. By virtue of Sergeant's actions, Merial is entitled to all reasonable attorneys' fees and costs incurred in bringing this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Merial herewith prays for the following relief:

(a) That Merial be awarded general damages in an amount to be determined at trial and, which are currently difficult to precisely ascertain, but in any event to exceed $75,000.00, exclusive of interest and costs;

(b) That Merial be awarded pre- and post-judgment interest thereon calculated at the applicable statutory rate;

(c) That this Court award Merial its attorneys' fees, costs, and expenses in this action; and

(d) That the Court grant Merial any and all such further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Merial requests a trial by jury of all issues so triable to a jury raised in this Complaint.

Respectfully submitted, this 28th day of March, 2018.

Judy Jarecki-Black, Ph.D.
Georgia Bar No. 801698
(*pro hac vice* application forthcoming)
**MERIAL, INC.**
3239 Satellite Blvd.
Duluth, Georgia  30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350
Email: judy.jarecki@merial.com

Edward D. Tolley
Georgia Bar No. 714300
(*pro hac vice* application forthcoming)
**COOK & TOLLEY, LLP**
304 East Washington Street
P.O. Box 1927
Athens, Georgia 30603-1927
Tel.: (706) 549-6111
Fax: (706) 548-0956
Email: etolley@mindspring.com

*/s/ **Thaddeus E. Morgan***
Thaddeus E. Morgan (P47394)
**FRASER TREBILCOCK**
124 West Allegan Street, Suite 1000
Lansing, Michigan 48933
Telephone: (517) 482-5800
Email: tmorgan@fraserlawfirm.com

James C. Grant
Georgia Bar No. 305410
(*pro hac vice* application forthcoming)
Matthew W. Howell
Georgia Bar No. 607080
(*pro hac vice* application forthcoming)
Sean B. Bedford
Georgia Bar No. 807127
(*pro hac vice* application forthcoming)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Fax: (404) 881-7777
Email: jim.grant@alston.com
Email: matthew.howell@alston.com
Email: sean.bedford@alston.com

*Counsel for Plaintiffs Merial, Inc.*