UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERIAL, INC.,

    Plaintiff,

v.

SERGEANT'S PET CARE
PRODUCTS, INC.,

    Defendant.
_____/

Case No. 1:18-CV-351

HON. GORDON J. QUIST

## OPINION

The dispute in this case—between competitors in the pet-care industry that make and/or sell topical flea and tick medicine for dogs and cats—as framed by the complaint, is relatively simple. Plaintiff, Merial, Inc., alleges that Defendant, Sergeant's Pet Care Products, Inc., breached an agreement and an amendment to that agreement by making, using, or selling flea and tick treatment products covered by Merial's patent. The actual dispute, of course, is more complicated, raising the following issue: what happens when Company A enters into an agreement with Company B providing that Company B will not sell products that infringe Company A's patent; Company A then enters into an agreement with Company C that allows Company C, under certain circumstances, to sell products that infringe Company A's patent; and Company D purchases Company B's assets, including its contract rights and obligations pertaining to the agreement with Company A, then merges with Company C, continuing on as the surviving entity? In real life, Merial is Company A, Sergeant's is Company B, Velcera, Inc. is Company C, Perrigo Company is Company D, and the United States District Court for the Northern District of Georgia answered the question. *See Perrigo Co. v. Merial Ltd.*, 267 F. Supp. 3d 1364 (N.D. Ga. 2017), *denying*

*reconsideration* 2017 WL 5236106 (N.D. Ga. Mar. 23, 2017). Thereafter, Merial filed the instant case in this Court.

Sergeant's argues that the Georgia court has already determined the issue of breach in the instant case, and this Court should therefore defer to that ruling. Accordingly, Sergeant's moves to dismiss this case on the basis of collateral estoppel (also known as issue preclusion), or alternatively, stay this case pending completion of the Georgia litigation.[1] Merial has responded, arguing that collateral estoppel does not apply and the Court should not stay this case.

For the following reasons, the Court will grant Sergeant's motion and dismiss the case.

## I. BACKGROUND

**A.     The Cast**

The parties to the instant case are Merial and Sergeant's. Merial,[2] a major player in the pet-care industry, developed a highly successful topical medicine to control fleas and ticks on mammals, including dogs and cats, sometime prior to April 2011. The medicine, known as "Frontline Plus," was covered by U.S. Patent No. 6,096,329 (the '329 Patent), which expired in 2016. (ECF No. 1 at PageID.2–3.) The '329 Patent, which relates to pesticidal combinations, teaches "spot-on compositions comprising as active ingredients the pesticides known as fipronil and methoprene" (Combination Product). (*Id.* at PageID.3.)

Sergeant's is a competitor to Merial in the pet-care industry. In early 2011, Sergeant's began selling FiproGard Plus, a generic version of Frontline Plus containing fipronil and methoprene. (*Id.* at PageID.4.)

---

[1] Although Sergeant's has requested oral argument, the Court concludes that the parties' briefs adequately address the issues presented and oral argument is therefore unnecessary.

[2] Merial, for purposes of this Opinion, refers to all Merial entities, including Merial Limited, Merial LLC, and Merial SAS. (ECF No. 1 at PageID.2.)

Two other entities are germane to the dispute: Velcera, another Merial Competitor that also sold Combination Products, and Perrigo, which ultimately became the successor-in-interest to Sergeant's and Velcera.

**B.    Prologue**

In 2010, Sergeant's filed a request for reexamination of the '329 Patent with the United States Patent and Trademark Office challenging the patent's validity. (ECF No. 1 at PageID.4.) In early 2011, while the reexamination proceeding was still pending, Sergeant's began selling a Combination Product named FiproGard Plus, "a generic version of Frontline Plus." (*Id.*) In April 2011, Sergeant's and Merial entered into an agreement (the Sergeant's Agreement) that required Sergeant's to, among other things, refrain from selling any Combination Products during the life of the '329 Patent if the reexamination resolved in Merial's favor, and Merial agreed not to sue Sergeant's for infringement. When the reexamination proceeding concluded favorably for Merial, Merial and Sergeant's amended the Sergeant's Agreement (the Sergeant's Amendment) to affirm Sergeant's obligation not to make or sell infringing products. (*Id.* at PageID.5.)

On September 12, 2012, Perrigo acquired Sergeant's through an asset purchase agreement. Perrigo then transferred Sergeant's assets to a wholly-owned subsidiary, Perrigo Animal Health. *Perrigo*, 267 F. Supp. 2d at 1366–67.

At some point during 2012, Merial and Velcera had a dispute regarding the '329 Patent. As with Sergeant's, Merial entered into a settlement agreement (the Velcera Agreement) to resolve the dispute. The Velcera Agreement differed significantly from the Sergeant's Agreement. Velcera promised to cease selling any infringing product from the date of the agreement through, at the latest, November 30, 2014, and Merial promised that it would not sue Velcera or its affiliates for infringement of the '329 Patent after November 30, 2014, and would not grant any third party

a covenant not to sue or permission (including a license) to sell infringing products. The parties further agreed that after November 30, 2014, Velcera could sell infringing products in exchange for a royalty payment of 8% on all sales of such products until the '329 Patent expired. *Id.* at 1367.

In April 2013, Perrigo "merged with Velcera and became the sole owner of all of Velcera assets, including flea and tick products." *Id.* In Mid-2014, Perrigo began preparing to release a product to compete with Frontline Plus, and pursuant to the Velcera Agreement (which provided for a jointly-agreed-to press release), submitted a proposed statement to Merial for approval. *Id.* During the negotiations over the press release, which referred to Sergeant's intent to offer infringing flea products for sale, Merial's representative inquired why, in light of the Sergeant's Agreement, Sergeant's believed it could sell Combination Products. *Id.* at 1367–68. The parties eventually agreed to a statement, which Perrigo released to its customers on August 29, 2014. Soon thereafter, Perrigo inquired of Merial whether it had granted any third-party rights under the '329 Patent—a breach of the Velcera Agreement. Merial confirmed that it had not done so, but requested information about the Sergeant's-Velcera-Perrigo relationship(s). *Id.* at 1368. Perrigo never provided such information to Merial. *Id.*

In mid-November, 2014, Perrigo paid Merial $2,000,000 in satisfaction of its obligations under the Velcera Agreement. The payment was sent from Sergeant's Pet Care Products, Inc.'s account and was designated as "Velcera Settlement Payment." Merial never objected to the payment. Two weeks later, Perrigo Animal Health began selling flea medicines under the brand names FiproGard Plus and Pet Armor Plus. *Id.*

**C.     Act I**

On December 12, 2014, Perrigo, Sergeant's, Velcera, and another entity, FidoPharm, Inc. (collectively the Perrigo entities), sued Merial in the United States District Court for the District

4

of Nebraska, alleging that Merial breached the Velcera Agreement. In October 2015, the Nebraska court granted Merial's motion to transfer venue to the Northern District of Georgia, where the case was assigned Civil Action No. 1:15-CV-3674 (3674 Case).

**D. Act II**

Two weeks after the Perrigo entities filed the Nebraska case, Merial sued the Perrigo entities in the Northern District of Georgia alleging that they breached the Sergeant's Agreement and seeking a declaratory judgment that Merial had not breached the Velcera Agreement. The case was assigned Civil Action No. 1:15-CV-13 (13 Case).

After the 3674 Case was transferred from Nebraska, Merial moved to consolidate the 3674 Case and the 13 Case, arguing that the factual and legal issues in both cases were the same. In particular, Merial noted that in the 3674 Case, the Perrigo entities alleged that Merial breached the Velcera Agreement, while in the 13 Case, Merial sought a declaratory judgment that it did not breach the Velcera Agreement. (*Perrigo Company, et al v. Merial Limited*, No. 1:15-cv-3674-SCJ (N.D. Ga.) Doc. 157-1 at 7.) Merial further noted that one of its primary defenses in the 3674 Case was that because the Perrigo entities breached the Sergeant's Agreement, they were not permitted to sell Combination Products that practice the '329 Patent pursuant to the Velcera Agreement. (*Id.* Doc. 157-1 at 7–8.) Finding consolidation appropriate, in part because it was "clear to the Court that it w[ould] need to address the matter of the Sergeant's Agreement," the Georgia court granted Merial's motion to consolidate. (*Id.* Doc. 160 at 4.)

Finally, after consolidation, the Perrigo entities moved to dismiss the 13 Case for lack of personal jurisdiction. The Georgia court granted the motion and dismissed the 13 Case. *See Perrigo Co. v. Merial Ltd.*, 215 F. Supp. 3d 1329 (N.D. Ga. 2016).

## E. Act III

On July 8, 2016, Merial filed a motion for partial summary judgment in the 3674 Case based on its affirmative defense that because Perrigo violated the Sergeant's Agreement by selling Combination Products that infringed the '329 Patent, it was precluded from claiming that Merial breached the Velcera Agreement. The Georgia court explained the predicament:

> Perrigo's purchase of both Sergeant's and Velcera–neither of which the parties to either agreement contemplated when they negotiated and executed the contracts–started the parties down the unusually tortured path that led to where this case sits today. After the Velcera purchase, Perrigo and its affiliates had, simultaneously, the obligation to not sell 329 Patent infringing product until the patent expired (pursuant to the Sergeant's Agreement), and the obligation to not sell that product *until* November 30, 2014, at which point they would have to pay an 8% royalty for any sales (pursuant to the Velcera Agreement).

267 F. Supp. 3d at 1372. So, how to resolve the quandary—"Perrigo and its affiliates possessed both the obligation to not sell infringing product (per the Sergeant's agreement), and the right to sell that product after November 30, 2014 (per the Velcera Agreement)"? *Id.* at 1373. The court said that in the unique circumstances of the case, the later-in-time contract controls:

> Under the particular factual circumstances of this case . . . , the proper rule must be that when a company or person steps into the shoes of different parties (i.e., occupies the same position vis-à-vis the other party, and has the same rights as the original party) to two contracts at different times, the terms (and rights and obligations) of the later contract control in the event they conflict with a term or terms of the earlier agreement. To hold otherwise would elevate form over substance and unnecessarily restrict the stream of commerce.

*Id.* at 1374. The court thus concluded that "because the right to sell under the Velcera Agreement flowed to Perrigo *and* its affiliates, including Sergeant's[,] . . . [it created] the opening for Perrigo to legally circumvent the Sergeant's Agreement's sales ban." *Id.* at 1374.

Merial moved for reconsideration raising a number of issues, including that Perrigo marketed Combination Products using Sergeant's formulas, facilities, and packaging. The court

6

rejected each argument and denied reconsideration. *Perrigo Co. v. Merial Ltd.*, No. 1:15-Cv-3674-SCJ, 2017 WL 5236106 (N.D. Ga. Mar. 23, 2017).

**F.     Epilogue**

One year later, offering a pared-down version of the story and omitting important characters, Merial filed its complaint in the instant case, seeking a determination that Sergeant's breached the Sergeant's Agreement by selling infringing Combination Products.

## II. MOTION STANDARD

Sergeant's moves to dismiss Merial's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A party may raise claim and issue preclusion by way of a Rule 12(b)(6) motion to dismiss. *See Watermark Senior Living Ret. Cmtys, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425–26 (6th Cir. 2018). In deciding a motion to dismiss, a court may consider the allegations in the complaint and certain documents, including "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted). "Such public records that a court may consider include documents from other court proceedings." *Watermark Senior Living Ret. Cmtys, Inc.*, 905 F.3d at 425–26 (citing *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010)).

## III. DISCUSSION

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 2171 (2008); *see also* Restatement (Second) of Judgments § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court."). This rule applies regardless of whether the prior federal-court judgment was based on federal question or diversity jurisdiction. *See Allied Erecting & Dismantling Co. v.*

7

*Genesis Equip. & Mfg., Inc.*, 805 F. 3d 701, 708 (6th Cir. 2015) ("As this case involves successive diversity actions, federal res judicata principles apply.") (quoting *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006)).

"The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion." *JZG Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). Sergeant's motion raises issue preclusion, which "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Rawe*, 462 F.3d at 528 n.5. "Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892, 128 S. Ct. at 2171 (quotation marks and citation omitted). Issue preclusion applies where: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding.[3] *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

A.   **The Identical Issue Was Raised and Actually Litigated Against Sergeant's**

In the instant case, Merial alleges that Sergeant's breached the Sergeant's Agreement by making, selling, and offering for sale in the United States infringing Combination Products. (ECF

---

[3] Neither party argues that the Court should apply Georgia law regarding res judicata. Some cases, including those from this district, establish that "[i]n diversity cases, 'federal law incorporates the rules of preclusion applied by the State in which the intervening court sits.'" *Ranir, LLC v. Dentek Oral Care, Inc.*, No. 1:09-CV-1056, 2010 WL 3222513, at *2 (W.D. Mich. Aug. 16, 2010) (quoting *Taylor*, 553 U.S. at 891 n.4, 128 S. Ct. at 2171 n.4). Regardless, the Court discerns no material difference between the federal law of preclusion and Georgia law of preclusion that would impact the analysis in the instant case. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1264 (11th Cir. 2011) (setting forth elements of collateral estoppel under Georgia law).

No. 1 at PageID.7.) The same issue was in play before the Georgia Court, both as part of Merial's complaint in the 13 Case and as part of Merial's affirmative defense in the 3674 Case.

Although Merial does not dispute that Sergeant's was a party in the 13 Case and remains a party in the still-pending 3674 Case, it argues that the Georgia court's order was limited to determining whether Perrigo breached the Sergeant's Agreement. As support, Merial cites passages from the order referencing Perrigo but not Sergeant's, and Merial points out that in its analysis, the Georgia court differentiated between the two entities, noting that Sergeant's intent at the time it entered into the Sergeant's Agreement differed from Perrigo's intent at the time it merged with Velcera, thereby acquiring the right under the Velcera Agreement to sell infringing products.

Merial's argument causes the Court to wonder whether it and Merial are reading the same order. It is true that the Georgia court, at times, referred to Sergeant's and Perrigo as separate entities, but such references do not detract from the overall import of the order—that Perrigo, and, therefore, Sergeant's and the other related entities did not breach the Sergeant's Agreement. The Georgia court referred to Perrigo and Sergeant's separately for two purposes: first, to set the background leading up to Perrigo's acquisition of Sergeant's via asset purchase; and second, simply to point out that Perrigo's intent at the time it merged with Velcera and acquired the right to sell under the Velcera Agreement (when it had previously acquired Sergeant's rights under the Sergeant's Agreement) was different from Sergeant's intent and Velcera's intent at the time they signed their respective agreements with Merial. Having recognized that Sergeant's assets (including the Sergeant's Agreement) were transferred to Perrigo via the asset purchase, the Georgia Court had no need to continually refer to Perrigo and Sergeant's together. Nonetheless, the court left no doubt as to the scope of its ruling when it stated that "the right to sell under the

Velcera Agreement flowed to Perrigo *and* its affiliates, including Sergeant's." 267 F. Supp. 3d at 1374 (emphasis in original).

**B.     The Determination of No Breach of the Sergeant's Agreement was Necessary**

The second requirement for issue preclusion is also present. The Georgia court's determination that Perrigo, and thus Sergeant's, did not breach the Sergeant's Agreement was necessary to the outcome of the 3674 Case. In fact, in granting Merial's motion to consolidate the two cases, the Georgia court noted that it was "clear" that the court would need to address the Sergeant's Agreement in both cases. As it turned out, the court decided the breach issue in the context of Merial's affirmative defense based on Perrigo's (Sergeant's) alleged breach of the Sergeant's Agreement, which Merial said would bar Perrigo's claim that Merial breached the Velcera Agreement. Because Merial raised the issue via its motion for partial summary judgment, the court was bound to decide it.

**C.     The Georgia Court was a Court of Competent Jurisdiction**

Merial argues that regardless of whether the Georgia court rule on the precise issue in this case, issue preclusion cannot apply because the Georgia court was not one of competent jurisdiction. In particular, Merial notes that Sergeant's prevailed on its motion to dismiss the 13 Case for lack of personal jurisdiction, which contained the identical breach of contract claim at issue in the instant case. The argument is easily dispatched. Merial does not and cannot argue that the Georgia court lacked jurisdiction in the 3674 Case or that Merial presented the very same issue raised by its claim in the 13 Case—whether Perrigo/Sergeant's breached the Sergeant's Agreement—as an affirmative defense in the 3674 Case to the Georgia court by way of its motion for partial summary judgment. Thus, the Georgia court had jurisdiction to render a binding decision on the issue.

**D. The Georgia Court's Order is Sufficiently Final for Purposes of Issue Preclusion**

Last, Merial argues that the Georgia court's order denying Merial's motion for partial summary judgment cannot support issue preclusion because it is not a final judgment. As support for its argument, Merial quotes a section from Professors Wright and Miller's treatise concerning the preclusive effect of a partial summary judgment order and various out-of-circuit cases holding that a partial summary judgment is not a final judgment. As one court has observed, however,

> The issue is not . . . easily resolved under federal law. Some courts have adopted a *per se* rule that partial summary judgments are not final, whereas other courts have taken a more liberal approach, giving collateral estoppel effect to any judicial decision upon a question of fact or law which is not provisional and subject to future change by the same tribunal.

*Jamrose v. D'Amato* (*In re D'Amato*), 341 B.R. 1, 4 (B.A.P. 8th Cir. 2006) (footnotes and quotation marks omitted); *see also* 18A. C Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4434 (2d ed.) ("Recent decisions have relaxed traditional views of the finality requirement by applying issue preclusion to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief. The most prominent decisions have involved issues that were resolved by appeal prior to final judgment. These decisions have been extended, however, to issues that were decided only at the trial level and that remained open to later review and reversal.").

The Sixth Circuit has not extensively considered the issue, although it has observed that "a judgment is not required so long as there has been a final decision with respect to the issue to be given preclusive effect." *Am. Postal Workers Union Columbus Area Local AFL-CIO v. United States Postal Serv.*, 736 F.2d 317, 319 (6th Cir. 1984). Thus, it appears that the Sixth Circuit tends to follow the more liberal view of preclusion. In *Abbott Laboratories v. Thermo Chem., Inc.*, 790 F. Supp. 135 (W.D. Mich. 1991), Judge Bell explained the basis of this approach:

Section 13 of the *Restatement (Second) of Judgments* provides:

> For purposes of issue preclusion . . . , "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.

The official comments to § 13 explain that the criteria for determining finality for purposes issue preclusion are not as strict as they are for claim preclusion. Even though there is no final judgment in the strict sense, the court may regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment:

> Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.

*Restatement (Second) of Judgments* § 13 comment g (1980). . . .

Finality for collateral estoppel is not the same as that required to appeal under 28 U.S.C. § 1291. *Gilldorn Savings Association v. Commerce Savings Association*, 804 F.2d 390, 393 (7th Cir. 1986). . . . As noted by Judge Friendly in *Zdanok v. Glidden Co., Durkee Famous Foods Division*, 327 F.2d 944 955 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S. Ct. 1339, 12 L.Ed.2d 298 (1964), "finality" in the context of collateral estoppel "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."

*Id.* at 139–40; *see also Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 360 (3d Cir. 1999) ("Our decisions hold that decisions not final for purposes of appealability may nevertheless be sufficiently final to have issue preclusive effect."); *John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers, AFL-CIO*, 913 F.2d 544, 563 (8th Cir. 1990) (stating that "we believe that finality for purpose (sic) of appeal under section 1291 is not necessarily the finality that is required for issue preclusion purposes"); *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979) (same).

With regard to a partial summary judgment order, courts have found that issue preclusion is proper where: (i) the party to be estopped in the present action was represented by counsel in the prior action; (ii) the issues were genuinely contested; (iii) the court's summary judgment order was not tentative; and (iv) allowing relitigation of the issue would be a waste judicial resources. *Greenleaf*, 174 F.3d at 360. For example, in *Tate v. Showboat Marina Casino Partnership*, 250 F. Supp. 2d 958 (N.D. Ill. 2003), the court found the prior partial summary judgment order sufficiently final because it was "a careful, well-reasoned opinion, Judge Hibbler has twice refused the Harkins Plaintiffs' requests for reconsideration, and the *Harkins* case is now ready for trial." *Id.* at 960.

The circumstances surrounding the Georgia court's issuance of the partial summary judgment order demonstrate that the ruling was sufficiently final to render it final for purposes of issue preclusion. First, the court issued a substantial and carefully-considered opinion setting forth in detail its analysis of why the rights Perrigo/Sergeant's obtained pursuant to the Velcera Agreement trumped the prohibition in the Sergeant's Agreement. Moreover, nothing in the order indicates that it is tentative. Second, the issue was fully developed and contested. Third, the Georgia court denied Merial's motion for reconsideration in a well-reasoned opinion. Finally, a pretrial conference is set to occur in the Georgia case in November 2018, and relitigation of the issue in this Court would amount to a waste of judicial resources.[4]

---

[4] Merial argues that the order should not be considered final because the Georgia court denied Merial's motion to certify the partial summary judgment for an interlocutory appeal. (ECF No. 15 at PageID. 146.) However, "[t]he availability of judicial review is merely one factor to consider in determining whether issue preclusion applies." *John Morrell & Co.*, 913 F.2d at 563. Here, because the order is sufficiently firm, the lack of an appeal does not foreclose preclusion.

## IV. Conclusion

For the foregoing reasons, the Court will grant Sergeant's motion to dismiss on the basis of issue preclusion.

An Order consistent with this Opinion will enter.


Dated: October 30, 2018 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE